Terry HAMBY, Appellant,

v.

STATE FARM MUTUAL AUTO INSURANCE COMPANY, Appellee.

No. 01–03–00361–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 13, 2004.

---

Jeffry Paul O'dea, Mark E. Dykes, Houston, Randy E. Moore, Rodney C. Wiseman, Lake Jackson, for Appellant.

Reagan M. Brown, Carol S. Butner, Fulbright & Jaworski L.L.P., Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

This is an appeal of the trial court's judgment sustaining defendant/appellee State Farm Mutual Auto Insurance Company's second special exceptions to plaintiff/appellant Terry Hamby's pleadings, rendering a take-nothing judgment for Hamby, and dismissing the cause. In his sole issue, Hamby contends that the trial court erred in dismissing his case because an insurer cannot force an insured to transfer title to a "totaled" vehicle as a condition of paying the insured the actual cash value of the vehicle. We affirm.

### Factual & Procedural Background

In September 2002, a truck collided with Hamby's car, causing extensive damage. Because the cost to repair Hamby's car exceeded its actual cash value, State Farm elected to total the car rather than repair it; the parties agreed the actual cash value of the car was $25,970.75, minus a $500 deductible. The salvage value of the unrepaired car was $7,000.

State Farm instructed Hamby to assign title to the company, which he did not wish to do. The company would not issue a check for the actual cash value until it obtained the car's title. Following a series of letters exchanged between Hamby and State Farm, Hamby eventually accepted the check and assigned the title to State Farm "under protest."

On behalf of himself and other similarly situated persons, Hamby sued State Farm challenging State Farm's right to require

him to assign it title to the car in order to receive payment for the car's actual cash value. State Farm filed special exceptions to Hamby's pleadings, which the trial court granted. Hamby filed an amended petition, which State Farm challenged a second time with special exceptions. The trial court granted the special exceptions a second time and dismissed the cause, and this appeal ensued.

## Analysis

In his sole issue, Hamby contends that State Farm was not entitled to require him to assign it title to the car before paying him the car's actual cash value. In other words, he asserts that he should have been allowed to accept the cash value payment and keep the car.

### Standard of Review

■ The trial court has broad discretion to sustain special exceptions. *Nichols v. Jack Eckerd Corp.,* 908 S.W.2d 5, 8 (Tex.App.-Houston [1st Dist.] 1995, no writ). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably without reference to any guiding rules and principles. *Id.* If the trial court sustains a defendant's special exceptions, it must give the plaintiff an opportunity to amend. *Id.* If the plaintiff amends, but does not cure the defect, or refuses to amend, the trial court may dismiss the case and the plaintiff may test the trial court's ruling on appeal. *Id.*

■ When we review a trial court's dismissal of a cause of action on special exceptions, we must accept as true all of the factual allegations set out in the challenged pleading. *Id.* The legal conclusions of the trial court as to whether the plaintiff's petition adequately established a cause of action are subject to de novo review in this Court. *Id.*

### Hamby's Pleadings

Here, after Hamby amended his pleadings, the trial court reached the conclusion that, accepting as true all of Hamby's factual allegations, his petition did not sufficiently allege a cause of action. It is this legal conclusion that we must now review.

■ Hamby argues that his pleadings clearly state a claim for breach of contract. While we agree that the pleadings indicate that breach of contract is the cause of action, that is not the focus of our inquiry. The focus is whether the factual allegations comprise a claim for breach of contract. We conclude that they do not.

Hamby's auto insurance policy with State Farm contained the following pertinent provision:

LIMIT OF LIABILITY

Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other of like kind and quality; or

3. Amount stated in the Declarations of the policy.

State Farm offered, and Hamby accepted, payment of the car's actual cash value, in accordance with the terms of the contract.

Hamby's primary contention is that the plain language of the Limit of Liability clause "does not require [him] to forfeit title" to [his] car to State Farm if State Farm chooses to pay actual cash value for the car. Thus, he argues that State Farm breached the contract by forcing him to forfeit title to the car as a condition of its paying him the actual cash value of the car, whereas the "Limit of Liability" provision does not require forfeiture of title. Hamby thus asks us to look solely to the "Limit of Liability" provision to resolve

this issue. However, the Limit of Liability clause does not resolve the matter because this provision does not address the issue.

What Hamby is actually challenging is State Farm's right to keep the car. To determine whether State Farm could impose such a condition, we must look to a different provision of the insurance contract:

PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or
2. The address shown in this policy

If we return stolen property we will pay for any damage resulting from the theft. *We may keep all or part of the property at an agreed or appraised value.*

(Emphasis added). Hamby contends that this clause applies only if the car has been stolen. Based on the plain language of this contract provision, however, it is not reasonable to conclude that, because the next-to-last sentence mentions only stolen cars, the last sentence only applies to stolen cars. As a matter of law, we hold that this provision as a whole and the last sentence in particular apply to both stolen and damaged cars.

We are not alone is reaching this conclusion. In construing a policy with limit of liability and payment of loss clauses identical to the clauses here, the Rhode Island Supreme Court held that the insurer possessed the absolute right to elect either to repair its insured's damaged vehicle or to pay cash for the damaged vehicle's replacement value and keep the car. *Pawtucket Mut. Ins. Co. v. Gay,* 786 A.2d 383, 384–85 (R.I.2001). As a practical and legal matter, it is necessary to obtain title to a car to "keep" it. Moreover, although Hamby asserts that he was coerced into accepting the actual cash value and assigning the title to State Farm, the record reflects that he was offered the opportunity to accept $18,470.75 (actual cash value minus $7000 salvage value) and keep the car himself. He chose to accept the higher payment; thus he was required to turn the car and its title over to State Farm at its request. Accordingly, Hamby's pleadings, taken as true, do not show a breach of contract.

The trial court did not abuse its discretion in sustaining the special exceptions, rendering a take-nothing judgment, and dismissing the cause.

We affirm the judgment of the trial court.